IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**SESHADRI RAJU, M.D., P.A.**                                                                                                  **PLAINTIFF**

**VS.**                                 **CIVIL ACTION NO. 3:17-cv-00357-CWR-FKB**

**ERIN MURPHY, M.D.**                                                                            **DEFENDANT**

**AND**

**ERIN MURPHY, M.D.**                                                             **COUNTER-PLAINTIFF**

**VS.**

**SHESHADRI RAJU, M.D., P.A.**                                      **COUNTER-DEFENDANTS**
**AND SHESHADRI RAJU, M.D.**

**DEFENDANT AND COUNTERCLAIMANT ERIN MURPHY, M.D.'S
MEMORANDUM BRIEF IN SUPPORT OF HER RESPONSE
IN OPPOSITION TO PLAINTIFFS' AND COUNTERDEFENDANTS'
MOTION TO STAY PROCEEDING AND COMPEL ARBITRATION**

COMES NOW the Defendant, Erin Murphy, M.D. (hereinafter "Dr. Murphy" or "Defendant" or "Counter-claimant"), by counsel, and responds to Plaintiff's and Counter-defendant's Motion to Stay Proceeding and Compel Arbitration [Docs. 4, 5] as follows.

## INTRODUCTION AND FACTUAL BACKGROUND

On March 14, 2017, Plaintiff Seshadri Raju, M.D., P.A.[1] filed suit against Dr. Erin Murphy, with whom he formerly practiced medicine. [Doc. 1-1.] In the Complaint, filed in Hinds County Circuit Court, Dr. Raju alleged that Dr. Murphy breached the Physician Employment Agreement that governed their professional relationship. Dr. Raju specifically invoked the court's jurisdiction demanding: (a) compensatory damages to be determined *at trial*; (b) punitive damages to be determined *at trial*; (c) attorneys fees and

---

[1] Raju P.A. is the entity through which Dr. Raju practices medicine, and the Raju parties are hereafter collectively referred to hereafter as Dr. Raju.

1

costs *of court*; and (d) other relief as the court shall deem proper. [Doc. 1-1, at ¶ 20 (unnumbered).] In his Complaint, Dr. Raju quoted extensively from the Physician Employment Agreement, *id.* at ¶ 7, but nowhere referred to the arbitration provision in ¶ IX (A). Nor did, Dr. Raju send Dr. Murphy a demand for arbitration before suing.[2] [Ex. A, Declaration of Dr. Murphy, at ¶¶ 4-5.] Dr. Raju specifically alleged in his Complaint: "Jurisdiction and venue are proper in the Circuit Court of Hinds County, Mississippi." [Doc. 1-1, at ¶ 4.]

To respond to the lawsuit, Dr. Murphy first had address the false residency allegation as Dr. Raju had wrongly asserted in his Complaint that Dr. Murphy was a resident of Mississippi subject to the jurisdiction of the Mississippi state courts. [Doc. 1-1, at ¶ 2.] Dr. Murphy and counsel addressed that issue, after which Dr. Murphy incurred the legal cost of removal pleadings, as well as the $400 filing fee. Dr. Murphy then answered Dr. Raju's lawsuit on May 31, 2017. [Doc. 2.] She included a considered and extensive counter-claim as part of her legal response and strategy. *See id.*

This process required Dr. Murphy to plan with counsel to determine her legal rights and her strongest legal approach. [Ex. A, Declaration of Dr. Murphy, ¶¶ 6-9.] To protect her legal position in Court, as opposed to arbitration, Dr. Murphy incurred significant legal costs. [Ex. A, Declaration of Dr. Murphy ¶ 9; Ex. B, Affidavit of Maison Heidelberg ¶ 9.] She also incurred additional legal costs for examining the potential procedural mechanisms for asserting counterclaims in court, a procedure different from the more simple, pleading procedures in arbitration. [Ex. B, Affidavit of Maison Heidelberg, ¶¶ 8-9.]

---

[2] When Dr. Raju elected to sue in court, he acted as if the arbitration provision did not exist, and he certainly did not view it as controlling because otherwise he would not have sued.

In addition, because Dr. Raju sued in court through a public filing available to anyone with internet access, Dr. Murphy had to spend considerable time working through the potential business effects associated with a public filing.  Dr. Raju's Complaint included specific allegations about Dr. Murphy's ongoing business relationship with Medtronic.  [Doc. 1-1, at ¶¶ 10-11, 15].  Had Dr. Raju elected to send a demand for arbitration, such demand and any specific allegations would not have been public record.  Considering the legal and business consequences associated with allegations of wrong doing in a public forum cost Dr. Murphy considerable time and consultation with counsel and business associates.  [Ex. A, Declaration of Erin Murphy, M.D., at ¶ 10.]

Dr. Raju knew all of this, of course, which is why he initiated suit in a public forum. It was not until the tactical advantage shifted that Dr. Raju invoked the arbitration clause in the contract.  That is, not until Dr. Murphy counter-claimed and placed Dr. Raju's actions in issue did Dr. Raju request that this Court refer the matter to arbitration.  Dr. Raju made a legal, tactical decision based upon a belief that he could be on offense in a public forum, but when he was confronted with being on defense, he changed his mind and decided he would prefer to arbitrate.  Moreover, when Dr. Raju recognized that his own actions would be criticized in a public forum, as opposed to the non-public forum of arbitration, he reconsidered and decided that arbitration was preferable after all.

Having chosen a lawsuit, Dr. Raju waived any rights to arbitration that otherwise existed.  Both the Mississippi courts and the Fifth Circuit Court of Appeals recognize that a Plaintiff who chooses litigation over arbitration forfeits his rights to later change course and request arbitration.  Accordingly, this Court should deny the motion [Doc. 4], retain

jurisdiction over the lawsuit that Dr. Raju chose to initiate, and enter a regular scheduling order.

## **LEGAL ARGUMENT**

Dr. Raju argues that the parties have executed "a valid and binding" arbitration agreement that "covers all issues that are in dispute in this litigation." [Doc. 5 (relying on ¶ IX(A) of the Physician's Employment Agreement)]. Yet Dr. Raju filed a lawsuit that nowhere mentioned this contractual arbitration provision; to the contrary, Dr. Raju ignored the provision, invoked the sole jurisdiction of this Court, demanded specific legal relief from this Court, and claimed he had a right to assert claims outside of arbitration.

A. <u>Mississippi law controls the question.</u>

Citing the Federal Arbitration Act ("FAA"), Dr. Raju argues that it applies to claims in both state and federal court, that there is a presumption in favor of finding arbitration, and that doubts as to the availability of arbitration should be resolved in favor of arbitration. [Doc. 5.] However, district courts examining motions to compel arbitration conduct the analysis under the state's law that governs the contract. *E.g., East Ford, Inc. v. Taylor*, 826 So. 2d 709, 713 (Miss. 2003); *Webb v. Investacorp, Inc.*, 89 F.3d 252 (5th Cir. 1996). Here, the Physician Employment Agreement states that Mississippi law governs. [Doc. 1-1, at ¶ IX(F)]. Hence, Mississippi law applies.

Applying the state law contract principles, this Court must first determine whether the parties agreed to arbitrate. *E.g., East Ford*, 826 So. 2d 709, 713 (Miss. 2003). Once that determination is made, the court must determine whether any defenses to arbitration exist. *Id.* Here, the Physician Employment Agreement does contain an arbitration provision (¶ IX(A)); however, Dr. Raju waived arbitration by suing in court.

4

B. <u>A plaintiff who sues waives arbitration</u>.

Courts assessing waiver typically ask two questions: (1) whether the party "substantially invoke[d] the judicial process" and (2) whether there was prejudice to the other party. *Nicholas v. KBR, Inc.*, 565 F.3d 904, 908-09 (5th Cir. 2009). The second question need not be asked, however, where, as here, *a plaintiff* invokes the judicial process and seeks judicial remedies inconsistent with his legal right to arbitration.

*Patel v. BancorpSouth Bank*, 187 So. 3d 1060 (Miss. App. 2016), dictates this outcome. Addressing waiver or arbitration in *Patel*, the Mississippi Court of Appeals concluded:

> "Therefore, it seems obvious that by *initiating* the Rankin County Action, the Defendants, who were *plaintiffs in that action*, <u>waived their right to arbitrate the matters contained in that lawsuit because the filing of the action itself is inconsistent with a desire to take advantage of the right to arbitrate</u>. So had the Rankin County Action been initiated first and remained viable, the Defendants, who were plaintiffs there, *would not have been able at some point later to change their minds and seek arbitration*."

*Id.* at 1064 (emphasis added). *Patel* involved two different lawsuits filed in two different venues, but the Court's waiver analysis squarely applies to this case. In other words, when a party chooses to sue, "… *filing of the action itself is inconsistent with a desire to take advantage of the right to arbitrate,*" and plaintiffs who choose to sue are not "*able at some point later to change their minds and seek arbitration.*"[3] *Cf. Sanderson Farms v. Gatlin*, 848 So. 2d 828, at 837-38 (holding that waiver under Mississippi law can be found

---

[3] *Cf. Harrison Cty. Commercial Lot, LLC v. H. Gordon Myrick, Inc.*, 107 So. 3d 943, 953 (Miss. 2013) (rejecting argument that party waived its right to arbitrate by filing complaint because party filed a motion to compel arbitration, not a lawsuit on the merits. "There are lawsuits that can be filed that would not be inconsistent with seeking arbitration." *Id.*; *see also* MS Prac. Encyclopedia MS Law § 5:8 ("Arbitration – Waiver of right to arbitration) ("[U]se of the judicial process pursuant to an exception within an arbitration agreement is permissible and will not waive the right to arbitrate.") (citing *Green Tree Servicing LLC v. Simmons*, 108 So. 3d 476, 481 (Miss. Ct. App. 2013). By contrast here, Dr. Raju did not file a lawsuit seeking this Court's jurisdiction to protect his arbitration rights, nor did his Complaint sue for matters the contract defined as being outside of arbitration.

when the party actively participates in litigation *or* acts inconsistently with the right to arbitrate).[4]  Under *Patel*, the second question of prejudice need not be asked when a party plaintiff has invoked court jurisdiction by initiating a lawsuit.  It follows that Dr. Raju's motion [Doc. 4] must be denied.

Fifth Circuit precedent is consistent.  Noting that "[i]n the vast majority of cases involving the question of waiver, it is the party being sued that belatedly seeks arbitration," the court in *Nicholas v. KBR, Inc.*, ruled that *a plaintiff who chooses to sue – even though he has a right to arbitrate - waives arbitration.* 565 F. 3d at 909 (5th Cir. 2004).  The Fifth Circuit further observed that "the decision to file suit typically indicates a 'disinclination' to arbitrate" and that "… short of directly saying so in open court, it is difficult to see how a party could more clearly 'evince[ ] a desire to resolve [a] ... dispute through litigation rather than arbitration,' than by filing a lawsuit going to the merits of an otherwise arbitrable dispute." *Id.* (citation omitted).[5]  Hence, *Nicholas* is consistent with *Patel*:  a plaintiff who could arbitrate but who chooses to sue instead waives arbitration.

C. If the Court considers detriment or prejudice, Dr. Murphy meets the standard.

Under *Patel* and *Nicholas*, the second question of prejudice need not be considered.  But if the Court does consider the question of prejudice, Dr. Murphy has met the standard, which in this context is low and often referred to as "detriment."  *In re Mirant*

---

[4] The Mississippi Supreme Court has held as a matter of rule that arbitration is waived when a party "actively participates in a lawsuit *or* takes other action inconsistent with the right to arbitration." *Cox v. Howard, Weil, Labouisse, Friedrichs, Inc.*, 619 So. 2d 908, 913 (Miss. 1993) (emphasis added).  Dr. Raju has done both – one cannot more actively participate in litigation than to invoke the process at the outset, and suing in court is flatly inconsistent with the right to arbitrate.

[5] *See also University Nursing Associates, PLLC v. Phillips*, 842 So. 2d 1270, 1276-77 (Miss. 1993) (holding that invoking the judicial process to the detriment of the other party constitutes waiver of arbitration); *Lemon Drop Properties, LLC v. Pass Marianne, LLC*, 73 So. 3d 1131 (Miss. 2011) (finding a waiver of arbitration when the defendant did not assert arbitration as an affirmative defense and demanded a jury trial).

*Corp.*, 613 F.3d 584, 588-89 (5th Cir. 2010) (holding "[w]aiver will be found when the party seeking arbitration substantially invokes the judicial process to the *detriment* or prejudice of the other party") (emphasis added). The Fifth Circuit has consistently held that mere delay, expense, <u>or</u> damage to a party's legal position is sufficient to meet the prejudice test. *Janvey v. Alguire*, 847 F.3d 231 (5th Cir. 2017); *see also Nicholas*, 565 F. 3rd at 907 (same holding).[6] While Dr. Murphy need establish only one element to prove prejudice, she can establish all three (3).

As to delay, suit was filed in March, 2017. [Doc. 1-1.] An arbitration demand was not raised pre-suit, nor was arbitration invoked in the lawsuit. [Ex. A, Declaration of Dr. Murphy, at ¶¶ 4-5.] It follows that at a minimum the failure to demand arbitration caused months of delay in adjudication of the claims. Notably, courts assessing delay in similar situations have considered whether the waiving party's tactical or legal strategy precipitated the delay:

> Although Noatex and Kohn Law Group argue they timely filed their first motion for arbitration six days after APMM filed its amended complaint in interpleader adding Kohn Law Group as a defendant, the Court disagrees. As noted above, Noatex and Kohn Law Group waited to move to compel arbitration until Kohn Law Group was assured it could not get the result it wanted in California district court. Under these circumstances, Noatex and Kohn Law Group's actions did not constitute a timely demand for arbitration. Finally, both APMM and King Construction suffered considerable litigation expenses and prejudice to their legal positions by the delay of the resolution of this case by the actions of Noatex and Kohn Law Group as described above. For all these reasons, the Court finds that Noatex and Kohn Law Group have waived their right to arbitration.

---

[6] The Mississippi Supreme Court has held that failing to timely pay an arbitration fee could, in itself, waive the right to arbitration. *Sanderson Farms, Inc. v. Gatlin*, 848 So. 2d 828 (Miss. 2003). Numerous courts have held that a defendant filing an answer and counterclaim without demanding arbitration waives arbitration. *E.g., Johnson Associates Corp. v. HL Operating Corp.*, 680 F.3d 713 (6th Cir. 2012).

7

*Auto Parts Mfg. Mississippi Inc. v. King Const. of Houston, LLC*, 74 F. Supp. 3d 744, 752–53 (N.D. Miss. 2014), *aff'd sub nom. Auto Parts Mfg. Mississippi, Inc. v. King Const. of Houston, L.L.C.*, 782 F.3d 186 (5th Cir. 2015).

As importantly, Dr. Raju's decision to file suit created additional expense[7] for Dr. Murphy. The Complaint erroneously, and tactically, asserted that Dr. Murphy was a Mississippi resident. [Doc. 1-1, at ¶ 2.] Dr. Murphy had to incur the legal expense to *disprove* that false allegation as a predicate to establishing federal jurisdiction.[8] [Ex. A, Declaration of Erin Murphy, at ¶¶ 5-8.] Dr. Murphy also had to incur the cost to remove the lawsuit to federal court. Significant additional expense has been incurred by Dr. Murphy as a direct result of Dr. Raju's tactical decision to sue instead of arbitrate. [Ex. B, Affidavit of Maison Heidelberg, ¶¶ 5-9; Ex. A, Declaration of Erin Murphy, M.D., ¶¶ 5-8.] Notably, courts examining the prejudice issue have found waiver upon a very minimal showing of increased legal expense. *See In re Mirant Corp.*, 613 F.3d at 584, 591 (expenses associated with raising defenses and counterclaims constitutes prejudice); *Price v. Drexel Burnham Lambert, Inc.*, 791 F.2d 1156, 1159-60 (5th Cir. 1986) (expense associated with defending against a summary judgment motion is sufficient prejudice to waive arbitration).

---

[7] Although the defendant did not show "in terms of dollars and cents of its litigation costs in the district court," the court found that the record supported the district court's finding that the defendant's litigation activities were significant. *Nicholas*, *supra*, at 910-11. The court further stated: "While these litigation activities in the context of a larger, more complex case might be characterized as minimal, it was not unreasonable for the district court to find that they carry particular significance given the limited scope and relatively straightforward nature of [the plaintiff's] denial-of-benefits claims." *Id.* "These are precisely the expenses of litigation that arbitration is designed to avoid." *Id.* at 911.

[8] This was not an entirely simple analysis given that Dr. Murphy had practiced in Mississippi at the time of the events in issue, but had recently moved to South Carolina, and more recently moved to North Carolina. She now resides in South Carolina.

As to the third "detriment" factor, damage to a party's legal position, Dr. Murphy planned and began to execute a legal strategy based upon Dr. Raju's lawsuit in a judicial forum.  This strategy was based upon the fact that the matter was pending in court.  [Ex. B, Affidavit of Maison Heidelberg, at ¶¶ 5-8.]  Dr. Murphy's strategy of defending was obviously effective because Dr. Raju initially chose court but now desires arbitration.  That is, Dr. Murphy has a legal position that Dr. Raju does not like, so he is attempting to change the forum.  Permitting this mid-stream shift to arbitration would detrimentally affect Dr. Murphy's legal position.  She has countered Dr. Raju tactically and should not be forced to give up the ground she has gained.  Nor should Dr. Raju be permitted to have his cake and eat it, too,[9] by being permitted to pursue a fallback strategy once his initial strategy did not go as he had hoped.

As the Fifth Circuit observed in *Nicholas*, "…where a party fails to demand arbitration . . ., and, in the meantime engages in pretrial activity inconsistent with an intent to arbitrate, the party later opposing a motion to compel arbitration may *more easily show* that its position has been compromised, *i.e.*, prejudiced."  *Id.* at 910 (emphasis added); *see also Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 347-48 (5th Cir. 2004) ("A demand for arbitration puts a party on notice that arbitration may be forthcoming, and therefore, affords that party the opportunity to avoid compromising its position with respect to arbitrable and nonarbitrable claims" but "where a party fails to demand arbitration … and engages in pretrial activity inconsistent with an intent to arbitrate, the party later opposing a motion to compel arbitration may more easily show that its position has been compromised, *i.e.*, prejudiced.").

---

[9] Some use "you can't eat your cake and [then still] have it" as the form of this proverb.

Mississippi courts have analyzed the prejudice standard against a low bar in this context as well:

> We next evaluate whether Stovall suffered any prejudice. In this context, the supreme court has defined prejudice as "the inherent unfairness-in terms of delay, expense, or damage to a party's legal position-that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue." *Id.* at 1278 (¶ 30). Stovall claims that she "suffered prejudice as a result of providing information *703 to ... Citibank in discovery, incurring legal expenses, and experiencing procedural delays." We find that Stovall's legal position falls squarely within the meaning of prejudice as defined by the supreme court in this situation.

*Citibank, N.A. v. Stovall*, 211 So. 3d 700, 702–03 (Miss. Ct. App. 2016).

Dr. Murphy meets the prejudice standard should this Court apply it. She has incurred delay, expense, and damage to her legal position.

D. <u>Judicial estoppel precludes Dr. Raju from invoking arbitration.</u>

Independently, judicial estoppel prevents a party from asserting a position, benefitting from that position, and then when it becomes more convenient or profitable, retreating from that position later in the litigation. *In re Estate of Richardson*, 903 So. 2d 51, 56 (Miss. 2005); *see also Kirk v. Pope*, 973 So. 2d 981, 991 (Miss. 2007) (holding that a court will apply judicial estoppel when "a self-serving contradiction occurred"); *Copiah County v. Oliver*, 51 So. 3d 205, 207 (Miss. 2011) (holding that a party cannot take inconsistent positions); *see also Stockwell v. Draperton, LLC*, 111 So. 3d 694, 697 (Miss. 2013) (disallowing a party from claiming the other side waived the right to arbitration when, in fact, that same party had benefited from the opposite position). This Court should similarly deny Dr. Raju's motion under the doctrine of judicial estoppel.

## **CONCLUSION**

"While we hesitate to find that a party has waived its contractual right to arbitration, 'parties who use federal courts to advance their causes and then seek to finish their suits

in the alternate for a' are not kindly looked upon by this Court." *Huntington Bank v. Merrill Lynch*, 77 F.3d 479, *4 (5th Cir. 1996); (citing *Walker v. J. C. Bradford & Co.*, 938 F.2d 575, 578 (5th Cir. 1991)). The Northern District of Mississippi has similarly rejected attempts to tactically employ arbitration provisions as a back-up plan:

> Clearly, Noatex and Kohn Law Group first sought "a decision on the merits before attempting to arbitrate." See *Petroleum Pipe,* 575 F.3d at 480. This Court is not convinced that "[Kohn Law Group], having learned that the [California] district court was not receptive to its arguments, should be allowed a second bite at the apple through arbitration." See *id.* at 482. To hold otherwise would encourage litigants to delay moving to compel arbitration until they could ascertain "how the case was going in federal district court before deciding whether [they] would be better off there or in arbitration." *Hooper v. Advance Am., Cash Advance Ctrs. of Mo., Inc.,* 589 F.3d 917, 922 (8th Cir.2009) (quoting *Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc.,* 50 F.3d 388, 391 (7th Cir.1995)). "In essence, [Kohn Law Group] attempted to "play 'heads I win, tails you lose,' which is the worst possible reason for failing to move for arbitration sooner than it did." " See *In re Mirant Corp.,* 613 F.3d at 590 (citing *Hooper,* 589 F.3d at 922). It is clear to this Court that Kohn Law Group attempted to game the system by first seeking a decision on the merits in California district court while keeping the arbitration option as a backup plan in case the effort failed. *753 See *In re Mirant Corp.,* 613 F.3d at 590. "Any attempt to go to the merits and to retain still the right to arbitration is clearly impermissible." *Miller Brewing Co.,* 781 F.2d at 498. For all the foregoing reasons, the Court finds that Noatex and Kohn Law Group have invoked the judicial process.

*Auto Parts Mfg. Mississippi Inc. v. King Const. of Houston, LLC*, 74 F. Supp. 3d 744, 752–53 (N.D. Miss. 2014), *aff'd sub nom. Auto Parts Mfg. Mississippi, Inc. v. King Const. of Houston, L.L.C.,* 782 F.3d 186 (5th Cir. 2015).

Dr. Raju chose his course. He tactically chose to play offense in Hinds County Circuit Court, but when a counterclaim made his behavior the subject of the lawsuit, he invoked a backup plan. Dr. Murphy respectfully requests that this Court deny the Motion to Stay and Compel Arbitration. [Doc. 4].

11

This the 20th day of June, 2017.

                                    Respectfully submitted,

                                    */s/ C. Maison Heidelberg*
                                    C. MAISON HEIDELBERG, MB #9559
                                    *Attorney for the Defendant and Counter-Claimant, Erin Murphy, M.D.*

OF COUNSEL:

WATSON HEIDELBERG JONES PLLC
2829 Lakeland Drive, Suite 1502
Flowood, MS 39232
P.O. Box 23546
Jackson, Mississippi 39225-3546
Phone No. 601-503-1935
Fax No. 601-932-4400
mheidelberg@whjpllc.com

## **CERTIFICATE OF SERVICE**

I, C. Maison Heidelberg, attorney for Defendant, Erin Murphy, M.D., do hereby certify that I have this day served a true and correct copy of the above and foregoing document via the Court's electronic filing system, on the following:

    William S. Kellum
    P.O. Box 4318
    Jackson, MS  39296

THIS, the 20th day of June, 2017.

                                    */s/ C. Maison Heidelberg*
                                    C. MAISON HEIDELBERG