

No. 3:17-CV-357-CWR-FKB

SESHADRI RAJU,

*Plaintiff*,

v.

ERIN MURPHY,

*Defendant*.

_____

ORDER ON MOTION TO AMEND
_____

Before CARLTON W. REEVES, *District Judge*.

On October 31, 2018, the Court entered an Order denying without prejudice Dr. Seshadri Raju's motion to amend. Docket No. 139. Now before the Court is Raju's renewed motion. Docket No. 140. The proposed amendment adds a party, Medtronic Vascular, Inc. ("Medtronic"), and six substantive claims: (1) copyright infringement (2) federal misappropriation of trade secrets, (3) state misappropriation of trade secrets, (4) tortious interference with contract, (5) civil

conspiracy, and (6) unauthorized access to a computer network.[1] Dr. Erin Murphy argues that each of the proposed claims are futile and as such, the amendment should be denied.

# I

## Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes dismissal of actions that fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A district court may deny leave to amend a complaint if the amendment would be futile." *Myers v. CitiMortgage, Inc.*, 557 Fed. App'x 296, 297 (5th Cir. 2014).

When considering a motion to dismiss under Rule 12(b)(6), the Court accepts the plaintiff's factual allegations as true and makes reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff's claims must be plausible on their face, which means there is "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). Since *Iqbal*, the Fifth Circuit has clarified that the Supreme Court's "emphasis on the plausibility of complaint's allegations does not give district courts license to look behind those allegations and independently assess the likelihood that

---

[1] Having already determined that Raju has sufficiently shown good cause under Rule 16(b) and proper joinder under Rule 20 (Docket No. 139), the Court will focus on the parties' futility arguments. However, in the previous motion to amend, the Court was unable to assess each proposed additional claim due to undisputed clerical and substantive deficiencies. Therefore, the Court will still consider whether good cause exists for each claim.

the plaintiff will be able to prove them at trial." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 803 n. 44 (5th Cir. 2011).

The Court now turns to the claims.

## II

## Copyright Infringement

Murphy argues that the copyright infringement claim is deficient because (1) the Copyright Act does not protect Raju's surgical procedures, (2) there is no allegation of the ownership of a valid copyright, (3) there is no allegation of actionable copying, and (4) there are no alleged damages.

"To prove copyright infringement, a plaintiff must establish (1) ownership of a valid copyright; (2) factual copying; and (3) substantial similarity." *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 549 (5th Cir. 2015) (citation omitted). The Copyright Act does not extend protection "to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." 17 U.S.C. § 102(b).

Murphy's first argument is unpersuasive. Raju is alleging a copyright violation over the use of his surgical *videos*, not his surgical *procedures*. *See* Docket No. 140-1 at ¶ 67. Copyright protection extends to Raju's surgical videos. *See Concentro Labs., L.L.C. v. Practice Wealth, Ltd.*, 623 Fed. App'x 251, 252 (5th Cir. 2015) ("a copyright in a form or a video outlining a particular procedure does not extend to the procedure itself").

As for the second argument, Raju submitted to the Court a copy of his application for copyright registration of his

3

surgical videos and receipts for fees paid. He is awaiting the issuance of registration certificates. Murphy claims that this is insufficient to allege ownership of a valid copyright, but the Fifth Circuit disagrees. "A plaintiff has complied with the statutory formalities when the Copyright Office receives the plaintiff's application for registration, fee and deposit." *Lakedreams v. Taylor*, 932 F.2d 1103, 1108 (5th Cir. 1991). "[T]he Fifth Circuit has held that 'defects resulting from lack of registration are cured when the registration is filed, even if after suit is filed.'" *Hervey v. Keltman Pharm., Inc.*, No. 3:12-CV-625-CWR-FKB, 2015 WL 4673773, at *3 (S.D. Miss. Aug. 6, 2015) (citing *One Treasure Ltd., Inc. v. Richardson*, 202 F. App'x 658, 661 (5th Cir. 2006)). Raju, therefore, has alleged ownership of a valid copyright.

Next, Murphy claims that because Raju has alleged only that Murphy took a surgical video without permission, rather than actually using it in Murphy's or Medtronic's own work, or any substantial similarity, Raju has failed to allege actionable copying. Actionable copying consists of the last two elements of a copyright infringement claim: (1) factual copying, i.e., "whether the alleged infringer . . . actually used the copyrighted material in his own work, and (2) substantial similarity between the two works." *See Spear Mktg., Inc. v. BancorpSouth Bank*, 791 F.3d 586, 598 n. 62 (5th Cir. 2015) (quotation marks and citations omitted). Factual copying can be shown through direct or circumstantial evidence. *See Armour v. Knowles*, 512 F.3d 147, 152 (5th Cir. 2007). In Raju's proposed complaint, he alleges that the stolen video was used to develop Medtronic's venous stent program. *See* Docket No. 140-1 at ¶¶ 17, 29, 69. This is sufficient to allege actionable copying.

Raju may amend his complaint to include a copyright infringement claim.

## III

## Misappropriation of Trade Secrets—Defend Trade Secrets Act (DTSA)

The proposed complaint also alleges a misappropriation of trade secrets claim under federal law. Murphy argues that Raju fails to state a viable claim because (1) Raju's vein stents and stenting procedures are not trade secrets as defined by the Code, (2) there is no allegation that Raju's purported trade secrets were misappropriated, and (3) there are no alleged damages.

Before discussing the merits of Murphy's arguments, we must first return to whether good cause exists under Rule 16(b). In Raju's first motion to amend, he claimed that part of the reason he failed to timely seek amendment was because "the actions of Dr. Murphy and Medtronic could not have been known prior to filing the Complaint or the deadline to . . . amend." Docket No. 111. Raju alleged that subpoenaed documents contain emails from Murphy to Medtronic wherein Murphy discloses Raju's trade secrets.[2]

Upon further review of the original complaint, however, the facts that give rise to this trade secret claim against Murphy were in fact known to Raju before the amendment deadline. In the original complaint, Raju alleges that Murphy disclosed confidential information, including trade secrets, which were

---

[2] These trade secrets consist of "Raju specific stent placement procedures, stent deployment procedures, diagnostic methods, and research compilations." Docket No. 140-1 at ¶ 17.

exclusive to Raju, . . . without the express written authorization of Raju. *See* Docket No. 1-1 at ¶¶ 11, 15.

The documents subpoenaed from Medtronic allegedly reveal *more* disclosures of trade secrets and a conspiracy between Murphy and Medtronic to steal those trade secrets. Still, Raju was certainly aware that Murphy had disclosed trade secrets before the amendment deadline.

Good cause under Rule 16(b) is shown by considering: "(1) the explanation for the failure to timely move to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Alford v. Kuhlman Corp.*, No. 3:07-CV-756-HTW-LRA, 2010 WL 1257844, at *1 (S.D. Miss. Mar. 26, 2010) (citing *S&W Enter. v. Southtrust Bank*, 315 F.3d. 533 (5th Cir. 2003)) (brackets omitted). The Court "does not mechanically count the number of factors that favor each side." *EEOC v. Serv. Temps, Inc.*, No. 3:08-CV-1552-D, 2009 WL 3294863, at *3 (N.D. Tex. Oct. 13, 2009).

Raju's failure to include a misappropriation of trade secrets claim at the outset of this case suggests a lack of diligence, but the last three factors weigh in favor of granting leave to amend for the reasons stated in the Court's previous Order. *See* Docket No. 139. Considering the four factors as a whole, the Court finds that Raju has met the good cause standard despite his knowledge of facts sufficient to have alleged a misappropriation of trade secrets claim before the deadline.

A private right of action is allowed for misappropriation of trade secret claims where a plaintiff sufficiently alleges: (1) the existence of a trade secret; (2) misappropriation of the trade secret; and (3) the trade secret's relation to a product or service

used in, or intended for use in, interstate or foreign commerce. *See* 18 U.S.C. § 1836(b)(1). A trade secret is defined as information that:

> (1) the owner . . . has taken reasonable measures to keep . . . secret; and
> (2) derive[s] independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

*Id*. § 1839(3).

Raju has sufficiently alleged the existence of a trade secret. The proposed complaint sets forth allegations regarding procedures, methods, and compilations that Raju developed. Trade secrets, as defined by the Code, include:

> all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, *compilations*, program devices, formulas, designs, prototypes, *methods*, techniques, processes, *procedures*, programs, or codes

*Id*. (emphasis added).

The proposed complaint further alleges that Raju "maintained, or took reasonable precautions to maintain, the secrecy of his trade secrets," including the execution of a confidentiality agreement. Docket No. 140-1 at ¶¶ 9, 15. It also states that "the information derives independent economic value from its confidentiality and is not legally accessible to

others." *Id*. at ¶ 16. Raju claims that document production reveals that Murphy disclosed this information to Medtronic. *Id*. at ¶ 17. The Court must take these allegations as true at this stage.

Raju's complaint contains sufficient allegations to support a misappropriation of trade secrets claim under federal law.

## IV

### Misappropriation of Trade Secrets—Mississippi Uniform Trade Secrets Act (MUTSA)

Raju also seeks to bring a claim of misappropriation of trade secrets under Mississippi law. The question is whether it is preempted by the Copyright Act.

The Fifth Circuit has found similar state law claims, specifically unfair competition by misappropriation, to be preempted by the Copyright Act. *See Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 789 (5th Cir. 1999). That is because the Copyright Act provides, in relevant part:

> [A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright . . . in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright . . . , are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

8

17 U.S.C. § 301(a).[3]

Congress chose to exclude procedures, concepts, and methods of operation from federal copyright protection. "Allowing a state law to protect such works would undermine the exclusion of such subject matter from the federal copyright scheme." *Ultraflo*, 845 F.3d at 657 (quotation marks and citation omitted).

The Fifth Circuit utilizes a two-part preemption test to determine if state law claims are preempted by the Copyright Act. "First, the cause of action is examined to determine if it falls 'within the subject matter of copyright.' Second, the cause of action is examined to determine if it protects rights that are 'equivalent' to any exclusive rights of a federal copyright, as provided in 17 U.S.C. § 106." *Daboub v. Gibbons*, 42 F.3d 258, 288-89 (5th Cir. 1995) (citation omitted); *see also Alcatel*, 166 F.3d at 785-86. "Under the . . . 'equivalency test,' if the acts of which a plaintiff complains would violate both state law and copyright law, then the state right is deemed 'equivalent to copyright' and thus preempted." *Harrell v. St. John*, 792 F. Supp. 933, 941 (S.D. Miss. 2011) (citation omitted). "State law claims based on ideas fixed in tangible media are

---

[3] The Copyright Act may preempt claims for which it does not necessarily provide protection. "The preemption statute [] sweeps more broadly. It preempts state protections of works that fall within the subject matter (that is, the scope) of copyright, regardless whether the works are actually afforded protection under the Copyright Act. Scope and protection are not synonyms. . . . The shadow actually cast by the Act's preemption is notably broader than the wing of its protection." *Ultraflo Corp. v. Pelican Tank Parts, Inc.*, 845 F.3d 652, 656 (5th Cir. 2017) (quotation marks, brackets, and citations omitted).

preempted by the Copyright Act." *Spear Mktg., Inc. v. BancorpSouth Bank*, 791 F.3d 586, 597 (5th Cir. 2015).

Murphy argues that surgical procedures are clearly within the scope of copyright. Raju responds that because the surgical procedures were not contained in a tangible medium of expression, this claim is not preempted.

In *Ultraflo*, the Fifth Circuit concluded that copyright preemption extended to a state claim seeking to protect the plaintiff's valve design. The valve design (an "idea" or "useful article" not subject to copyright protection) was contained in a software program (a copyrightable work). *See Ultraflo Corp. v. Pelican Tank Parts, Inc.*, 845 F.3d 652, 657 (5th Cir. 2017).

The same is true here. Raju is seeking to protect, *inter alia*, his procedures and methods. The surgical procedures are contained in videos—videos that were allegedly stolen and disclosed to Medtronic by Murphy.[4] Videos are tangible mediums of expression. *See Cusano v. Klein*, 473 F. App'x 803, 804 (9th Cir. 2012) (finding that still and video footage of the plaintiff's performances and public appearances as a member of KISS were within the subject matter of copyright); *Ray v. ESPN, Inc.*, No. 13-1179-CV-W-SOW, 2014 WL 2766187 (W.D. Mo. Apr. 8, 2014) ("Once plaintiff's wrestling performances were captured on film, they became fixed in a tangible medium of expression") (quotation marks, brackets, and citation omitted); *Vaughn v. Kelly*, No. 06-C-6427, 2007 WL 804694, at *3 (S.D. Ill. Mar. 13, 2007) ("both the song [Step in

---

[4] Raju claims that trade secrets were also disclosed through lectures, presentations, and email communications. *See* Docket No. 140-1, at ¶¶ 17, 22, 28.

the Name of Love] and the video are original works of authorship fixed in a tangible medium of expression. Thus, the song and video satisfy the subject matter prong") (quotation marks, brackets, and citation omitted).

Raju's surgical procedures and methods all fall within the subject matter of copyright and, as such, pass the first prong of the preemption test.

The parties argued only the first prong of the preemption test. The preemption inquiry, however, does not end there. The Court must next determine whether this state law claim seeks to protect rights equivalent to those "within the general scope of copyright." This "extra-elements" test looks at whether "one or more qualitatively different elements are required to constitute the state-created cause of action being asserted." *Alcatel*, 166 F.3d at 787. If so, there is no preemption. *Id*. "Whether a claim is equivalent requires looking to the actual alleged misconduct and not merely the elements of the state cause of action." *GlobeRanger Corp. v. Software AG United States of America, Inc.*, 836 F.3d 477, 485 (5th Cir. 2016) (citation omitted).

"The Mississippi Uniform Trade Secrets Act (MUTSA) creates a cause of action for the misappropriation of another's trade secrets when those secrets are accessed by improper means." *Seven Seas Technologies, Inc. v. Infinite Comput. Sols., Inc.*, No. 3:13-CV-137-DPJ-FKB, 2018 WL 5625123, at *5 (S.D. Miss. Oct. 30, 2018). "To state a viable claim under MUTSA, a plaintiff must demonstrate: (1) a trade secret existed; (2) the trade secret was acquired though a breach of a confidential relationship or discovered by improper means; and (3) the use of the trade secret was without the plaintiff's authorization."

*Id*. "One form of misappropriation is the disclosure or use of a trade secret of another without express or implied consent by a person who, to acquire knowledge of the trade secret, used improper means such as theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy." *TLS Mgt. & Mktg. Serv., LLC v. Mardis Fin. Serv., Inc.*, No. 3:14-CV-881-CWR-LRA, 2018 WL 3698919, at *4 (S.D. Miss. Aug. 3, 2018) (quotations, brackets and citations omitted).

"Because trade secret law protects against not just copying but also any taking that occurs through breach of a confidential relationship or other improper means, all ten circuits that have considered trade secret misappropriation claims have found them not preempted by the Copyright Act." *GlobeRanger*, 836 F.3d at 486 (collecting cases). *But see Harrell*, 792 F. Supp 2d at 941 ("all of the state law claims asserted by [the plaintiff] have been found preempted under the Copyright Act. Specifically, claims for antitrust violations, misappropriation of trade secrets, and claims for unfair competition by misappropriation were preempted in *Alcatel*").[5] In accordance with the overwhelming case law, the Court concludes that Raju's trade secret misappropriation claim requires establishing an additional element—that the protected information was acquired through a breach of a confidential relationship or discovered by improper means—than what is required to make out a copyright violation.

---

[5] *Harrell* is not entirely correct. The only state law claim found to be preempted in Alcatel was unfair competition by misappropriation. *Alcatel*, 166 F.3d at 785, 789.

Having failed the second prong of the preemption test, this claim is not preempted.

Finally, Murphy restates the same futility arguments that she did for the federal trade secret misappropriation claim. Having already concluded that Raju has sufficiently pled the existence of trade secrets and the misappropriation of those trade secrets, the Court finds that this claim is neither preempted nor otherwise deficient.

## V

### Tortious Interference With Contract

Murphy again claims that Raju's tortious interference with contract claim is preempted by the Copyright Act. Murphy further contends that this claim is futile because (1) Murphy cannot tortuously interfere with her own contract, (2) Murphy resigned from her employment, (3) the purported interference was not wrongful, and (4) there are no alleged damages.

Murphy mischaracterizes Raju's pleading. Raju alleges that Medtronic, not Murphy, tortuously interfered with an existing contract. In his proposed complaint, Raju asserts that Medtronic employed Murphy without Raju's knowledge or authorization, as required by the employment agreement. He contends that Medtronic had direct knowledge of Murphy's employment with Raju and this wrongful interference prevented Murphy from performing under her existing contract.

The Court will not address Murphy's arguments here since the claim is only against Medtronic, and that claim is not futile.

# VI

## Civil Conspiracy

"Civil conspiracy is a derivative tort; therefore, liability . . . depends on participation in an underlying tort. To adequately plead a claim for civil conspiracy, a plaintiff must adequately plead the underlying tort" *Homoki v. Conversion Servs., Inc.*, 717 F.3d 388, 402 (5th Cir. 2013) (citations omitted).

The proposed complaint alleges that Murphy and Medtronic conspired to misappropriate Raju's trade secrets, in violation of federal and state law, and infringe his copyrights. Murphy argues, once again, that Raju's civil conspiracy claim is preempted by the Copyright Act. In support of this, Murphy cites a Fourth Circuit case, *Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co., Ltd.*, which concluded that

> the additional elements required to prove conspiracy to infringe copyrights are not sufficient to escape the Copyright's Act's ambit of preemption. Under Virginia law, the gist of the civil action of conspiracy is the damage caused by the acts committed in pursuance of the formed conspiracy and not the mere combination of two or more persons to accomplish an unlawful purpose or use an unlawful means. Thus the core of the claim for conspiracy to infringe copyrights is identical to that under the Copyright Act, and the extra element of agreement or combination does not make it otherwise.

682 F.3d 292, 311-12 (4th Cir. 2012) (quotation marks, brackets, and citations omitted).

While the Fifth Circuit has not addressed the question of whether conspiracy claims are preempted by the Copyright Act, several of our sister courts in this circuit have done so and reached the same conclusion.[6]

The civil conspiracy claim is not qualitatively different from the underlying federal copyright claim. As such, Raju's conspiracy claim is preempted to the extent that the conspiracy claim implicates Raju's copyrighted materials. However, because Raju also alleges that Murphy and Medtronic conspired to steal his trade secrets, that claim is not preempted.

Murphy also asserts that, because the alleged conspiracy began on August 8, 2015, the civil conspiracy claim is time-barred. Mississippi courts have applied the one-year statute of limitations period to claims of civil conspiracy. *See Harris v. Jackson Cty., Miss.*, No. 1:14-CV-435-LG-JCG, 2015 WL 5918196, at *4 (S.D. Miss. Oct. 9, 2015) (citing *Jones v. Flour Daniel Servs. Corp.*, 32 So. 3d 417, 422-23 (Miss. 2010) and *Gasparrini v. Bredemeier*, 802 So. 2d 1062, 1065-66 (Miss. Ct. App. 2001)). "In the conspiracy context, the cause of action accrues as soon as the plaintiff knew or should have known

---

[6] *See, e.g., Integrated3d, Inc. v. Aveva, Inc.*, No. 1:17-CV-159, 2017 WL 1185175, at *5 (E.D. Tex. Nov. 16, 2017); *Xpel Technologies Corp. v. American Filter Film Distributors*, No. SA-08-CA-175-XR, 2008 WL 3540345, at *8 n.51 (W.D. Tex. Aug. 11, 2008) ("while an allegation of conspiracy by itself does not add the extra element needed to survive preemption, when it is attached to a claim which already meets the extra element test, [such as misappropriation of trade secrets,] the conspiracy allegation should also survive"); *Cooper v. Sony Music Entm't Inc.*, No. CIV.A. 01-0941, 2002 WL 391693, at *4 (S.D. Tex. Feb. 22, 2002).

of the overt acts involved in the alleged conspiracy." *Shabazz v. Franklin*, 24 F.3d 239, 239 (5th Cir. 1994) (citation omitted). Raju asserts in his complaint, and the Court must accept as true, that he was not aware of the conspiracy until he received documents subpoenaed from Medtronic on June 26, 2018. Thus, Raju has sought to bring this claim well within the one year staute of limitations. It is not time-barred.

# VII

## Unauthorized Access to a Computer or Computer Network—Computer Fraud and Abuse Act (CFAA)

The CFAA makes unlawful "intentionally access[ing] a computer without authorization or exceed[ing] authorized access, and thereby obtain[ing] information from any protected computer." 18 U.S.C. § 1030(a)(2)(C). To bring a claim under the CFAA, Raju must show "not only that [he] suffered 'damage' or 'loss' by a defendant's alleged actions, but such damage or loss must meet the $5,000 statutory threshold set forth in 18 U.S.C. § 1030(c)(4)(A)(i)(I)." *New South Equip. Mats, LLC v. Keener*, 989 F. Supp. 2d 522, 531 (S.D. Miss. 2013) (citations omitted). The term "loss" is defined as

> [A]ny reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service.

18 U.S.C. § 1030(e)(11). In other words, cognizable loss under the CFAA "encompasses only two types of harm: costs to investigate and respond to a computer intrusion, and costs

associated with a service interruption." *Quantlab Techs. Ltd. (BVI) v. Godlevsky*, 719 F. Supp. 2d 766, 776 (S.D. Tex. 2010).

In his proposed complaint, Raju alleges that Murphy, with the intent to defraud, copied at least one surgical video from his website and delivered it to Medtronic, and that she absconded with Raju's computer after accepting a position with Medtronic. *See* Docket No. 140-1 at ¶¶ 69, 77, 82, 83. Raju further contends that, in his efforts to understand the scope of and prevent further unauthorized access, he has incurred costs in excess of $5,000. *Id*. at ¶ 82.

Murphy argues that a claim under the CFAA is futile because the proposed complaint contains no factual allegations of (1) unauthorized access, (2) damage or loss in excess of $5,000, or (3) fraud as required under 18 U.S.C. § 1030.

In *Keener*, Judge Lee dismissed the plaintiff's CFAA claim because the plaintiff had "neither alleged that it ha[d] sustained a loss of at least $5,000 nor plead facts that would support a conclusion that it ha[d] suffered loss totaling at least $5,000." *Id*. Specifically, the plaintiff in that case alleged loss "including, without limitation, expenses incurred in technical evaluation . . . to evaluate the breach of [it]'s computer systems and equipment and to determine what data was taken." *Id*. Here, Raju has gone a step further and attached a $5,000 amount to his alleged efforts to understand the scope and prevent further unauthorized access. That, however, is not specific enough. In *Keener*, Judge Lee referenced other district courts that have concluded that generalized allegations of damage and loss in excess of $5,000 during a one-year period is insufficient to plead the requisite jurisdictional amount under the CFAA. *See, e.g., Oce North*

*America, Inc. v. MCS Servs., Inc.*, 748 F. Supp. 2d 481, 488 (D. Md. 2010) (finding plaintiff's allegations that it "ha[d] suffered impairment to the integrity or availability of its data, programs, systems and information resulting in losses or damages in excess of $5,000 during a one year period" to be merely conclusory and insufficient).

It is impossible to ascertain from Raju's proposed complaint whether his loss, exclusive of damages, would exceed $5,000 in any one-year period. He does not allege an interruption of service as a result of Murphy's actions, or any specific investigation or response to Murphy's alleged unauthorized access to the computer. *See Godlevsky*, 719 F. Supp. 2d at 776. As a result, Raju has failed to adequately plead sufficient facts to bring a claim under the CFAA.

## VIII

## Conclusion

The motion to amend is granted in part and denied in part. As such, Murphy's pending motion for summary judgment is moot. Within 10 days, Raju shall file his Amended Complaint consistent with this Order and the parties are instructed to contact the chambers of the Magistrate Judge for a case management conference and the entry of a revised scheduling order.

SO ORDERED, this the 28th day of February, 2019.

s/ C<span style="font-variant:small-caps">arlton</span> W. R<span style="font-variant:small-caps">eeves</span><br>*United States District Judge*