IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**SESHADRI RAJU**                                                                            **PLAINTIFF**

V.                                                                     CAUSE NO. 3:17-CV-357-CWR-LGI

**ERIN MURPHY, MEDTRONIC, Inc.,**                                              **DEFENDANTS**
**JOHN DOES 1-10, et al.**

### ORDER

Before the Court is defendant Medtronic's omnibus motion *in limine*. Docket No. 369. Upon review, the motion will be granted in part and denied in part.

**I.      Factual and Procedural History**

This case has a long and arduous history. For present purposes, a simple summation will do. Plaintiff Dr. Seshadri Raju is a vascular surgery specialist. He hired Dr. Erin Murphy pursuant to a Physician Employment Agreement, in which the doctors agreed that Raju would instruct Murphy in surgical techniques and procedures. The agreement also prohibited Murphy from offering services to any third-party. Ultimately, the business relationship failed and a contractual dispute ensued.

During discovery, Raju learned that in violation of the agreement, Murphy provided consulting services to Medtronic Inc., in its efforts to develop a medical stent. On March 2, 2019, Raju amended his Complaint to add Medtronic as a defendant. He accused it of misappropriation of trade secrets, tortious interference with a contract, civil conspiracy, and copyright infringement. Docket No. 156. As this Court explained before, "[t]he gravamen of Raju's Complaint alleges that Medtronic misappropriated his trade secrets and copyrighted materials in order to create its own ABRE venous stent program." Docket No. 354 at 2. Medtronic's ABRE stent is a self-expanding

stent system designed and intended "for use in the iliofemoral veins for the treatment of symptomatic venous outflow obstruction." Docket No. 250-1.

In March 2021, this Court granted Medtronic's motion for summary judgment as to Raju's trade secrets and civil conspiracy claims. At issue today are the remaining two claims against Medtronic: tortious interference with a contract and copyright infringement.

## II.     Legal Standard

> A motion in limine is a motion made prior to trial for the purpose of prohibiting opposing counsel from mentioning the existence of, alluding to, or offering evidence on matters so highly prejudicial to the moving party that a timely motion to strike or an instruction by the court to the jury to disregard the offending matter cannot overcome its prejudicial influence on the jurors' minds.

*O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1306 n.1 (5th Cir. 1977) (quoting *Commentary, The Motion in Limine: Pretrial Trump Card in Civil Litigation*, 27 U. Fla. L. Rev. 531 (1975) (footnotes omitted)).

"Evidence should not be excluded in limine unless it is clearly inadmissible on all potential grounds." *Fair v. Allen*, No. 09-2018, 2011 WL 830291 (W.D. La. Mar. 3, 2011) (internal citations omitted); *see also Harkness v. Bauhaus U.S.A., Inc.*, No. 3:13-CV-129-DMB-SAA, 2015 WL 631512 at *1 (N.D. Miss. Feb. 13, 2015). "The purpose of motions in limine is not to re-iterate matters which are set forth elsewhere in the Rules of Civil Procedure or Rules of Evidence, but, rather, to identify specific issues which are likely to arise at trial, and which, due to their complexity or potentially prejudicial nature, are best addressed in the context of a motion in limine." *Maggette v. BL Development Corp.*, Nos. 2:07-CV-181-M-A, 2:07-CV-182-M-A, 2011 WL 2134578 at *4 (N.D. Miss. May 27, 2011) (italics omitted).

### III. Discussion

As a preliminary matter, motions *in limine* 1 and 7-11 are GRANTED as confessed. The Court addresses the motions in dispute below.

#### A. Damages Theory for Tortious Interference (Motion *in Limine* #2)

Raju seeks to introduce a "royalty-based damages theory" at trial as to his tortious interference claim. Medtronic argues that this theory has not been properly disclosed and fails as a matter of law.

The underlying facts are straightforward. Raju had a contract with Murphy that forbade Murphy from providing consulting services to any third-party. Murphy did not honor this obligation and consulted for Medtronic.

According to Raju, he, Murphy, and Medtronic were negotiating a compensation agreement whereby Murphy would consult for Medtronic, with Raju's "knowledge and authority." Docket No. 377 at 3, n.1. Presumably, this would have satisfied Murphy's employment agreement with Raju, and Raju would benefit financially. Instead, Raju alleges that Murphy abruptly ended the negotiations. Later, Raju learned that Murphy and Medtronic had cut out the middleman—him—and struck a deal without his knowledge or participation.

Here, Raju's theory becomes harder to follow. He says that Medtronic, by employing Murphy, was able to "gain [Murphy's] expertise (learned exclusively from Dr. Raju's training) at a substantial discount." Docket No. 377 at 2-3. As a result, he seeks "compensation for the expertise and know how provided by Dr. Murphy to Medtronic." *Id.* at 3.

Medtronic depicts this damages theory as a reincarnation of Raju's trade secrets claim, which did not survive a summary judgment motion. Significantly, this "new" theory may transform

a claim for $93,706, based on Murphy's excessive absences, to a $1.7 million dispute, based on the royalties of the stent that Murphy helped Medtronic develop.

The Court agrees that this theory and its corresponding report are untimely and prejudicial.

Raju's expert reports were due on November 28, 2019. *See* Docket No. 192. Raju admits that he disclosed the report about this damages theory at the September 21, 2021 settlement conference before Magistrate Judge LaKeysha Greer Isaac. Docket No. 377 at 5. Thus, this disclosure happened just eight months before trial and nearly two years after the deadline. Because the discovery deadline had long concluded, Medtronic claims it "had no opportunity to conduct discovery on this theory, no opportunity to question Raju P.A.'s expert on this theory, no opportunity to raise a Daubert challenge on this theory, and no opportunity to provide its own expert report addressing this theory."

The Federal Rules, Local Rules, and Fifth Circuit precedent have all addressed this issue, and resoundingly agree that this belated disclosure is unacceptable absent just cause. *See* Fed. R. Civ. P. 26(a)(2)(D) (mandating that "[a] party must make these disclosures at the times and in the sequence that the court orders."); L. U. Civ. R. 26(a)(2) (stating that "[d]iscovery regarding experts must be completed within the discovery period. The court will allow the subsequent designation or discovery of expert witnesses only upon a showing of good cause."); *see also Riquelme Valdes v. Leisure Res. Grp., Inc.*, 810 F.2d 1345, 1357 (5th Cir. 1987). Succinctly stated, "[t]rial by ambush is not contemplated by the Federal Rules of Civil Procedure." *Woods v. International Harvester Co.*, 697 F.2d 635, 639 (5th Cir. 1983); *see also Southern Wabash Communications, Ltd. v. Union County Broadcasting Co., Inc.*, 69 F. App'x. 285, 292 (6th Cir. 2003) (explaining that the modern federal discovery rules were designed to prevent trial by ambush); *Rodriguez v. Doral Mortg. Corp.*, 57 F.3d 1168, 1172 (1st Cir. 1995) ("The truth-seeking function of our

adversarial system of justice is disserved when the boundaries of a suit remain ill-defined and litigants are exposed to the vicissitudes of trial by ambush.").

Raju has offered up no just cause and none exists. Medtronic's motion to exclude is GRANTED.

### B. Undisclosed Tortious Interference Theories (Motion *in Limine* #3)

Medtronic asks the Court to prohibit Raju from introducing any testimony, evidence, or argument offered to support a tortious-interference theory that Raju has failed to properly disclose.

Medtronic does not specify how Raju "may attempt to depart from the theory of liability for tortious-interference pled in its complaint and litigated throughout this action." Docket No. 370 at 8. Medtronic, however, points to one of this Court's earlier Orders in which the undersigned addressed Raju's ever-changing theories as to trade secrets. *See* Docket No. 354 at 6 (finding that expert "Brown's supplemental report essentially abandons these theories and offers four separate trade secrets that are only tenuously related to Brown's initial report or Raju's Amended Complaint."). Still, this motion is expansive and lacks specificity.

The Court requires and expects all parties to follow the Federal Rules. "The purpose of motions in limine is not to re-iterate matters which are set forth elsewhere in the Rules of Civil Procedure or Rules of Evidence, but, rather, to identify specific issues which are likely to arise at trial, and which, due to their complexity or potentially prejudicial nature, are best addressed in the context of a motion in limine." *Maggette v. BL Development Corp.*, Nos. 2:07-CV-181-M-A, 2:07-CV-182-M-A, 2011 WL 2134578 at *4 (N.D. Miss. May 27, 2011) (italics omitted). The Court will address any objections on this issue during trial. For now, the motion is DENIED without prejudice.

### C. Damages for Copyright Claim, Expert Brian Buss, and Testimony Unrelated to Buss's Equivalent-Expenses Opinion (Motions *in Limine* #4-6)

Raju alleges that Medtronic committed copyright infringement by utilizing videos that Raju developed and had available for purchase on his website.

Under 17 U.S.C. § 504, which governs damages in copyright cases, plaintiffs are generally limited to one of two remedies. The first, under subsection (b), limits recovery to the copyright owner's actual damages and any additional profits of the infringer. Alternatively, the second, under subsection (c), limits recovery to statutory damages. Pursuant to this Court's earlier Order, Raju is not eligible for the latter. *See* Docket No. 354 at 21-22. Accordingly, he may only recover "actual damages" and "and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b).

Medtronic argues that Raju is attempting to pass off an unjust enrichment theory as actual damages and/or profits. This theory is the basis of an expert report by Brian Buss. *See* Docket No. 212-10. Raju agrees that unjust enrichment does not qualify as actual damages or profit. Instead, Raju argues that he is not claiming unjust enrichment but "the full measure of damages available under the plain language of 17 U.S.C. § 504(b)." Docket No. 377 at 9.

The problem for Raju is that Brian Buss's Expert Report declares that he was asked to "develop an analysis of economic damages," specifically, "an analysis of *unjust enrichment* achieved by Dr. Erin Murphy, M.D." . . . "and Medtronic, Inc." Docket No. 212-10 at 1. (emphasis added). Further, despite citing the correct copyright damages statute, the report goes on to state "I understand the Plaintiff is seeking unjust enrichment damages. Therefore this analysis does not include a calculation of lost profit damages." *Id.* at 3. Raju explains that that was mere mislabeling by his expert.

6

After a full review of the expert report, the Court finds that Buss's report is exactly what it says it is: an unjust enrichment damages report. For example, Buss opines on the "expenses and investments [Medtronic] did not undertake to procure its own equivalent video," or essentially the amount Medtronic saved by utilizing Raju's video rather than making its own. Buss goes on to calculate that Raju spent $318,500 to develop the videos, including $240,000 in connection with Raju's "collection of case material, collation, editing (400 hours at $600/hr.)". *Id.* at 4. Buss concludes that the "measure of Medtronic's unjust enrichment is $127,400, as Medtronic did not pay to procure its own equivalent video." *Id.*

This relates to neither actual damages nor profit. It is indeed an unjust enrichment theory, which is the "promise implied by law to pay for beneficial services rendered and knowingly accepted." *Schuchart & Assocs., Prof'l Eng'rs v. Solo Serve Corp.*, 540 F. Supp. 928, 945 (W.D. Tex. 1982). Unjust enrichment is "founded upon the principle that it is inequitable for one to refuse to pay for benefits received or work performed and accepted with his knowledge and consent by a person who should expect remuneration therefor from him." *Id.* And the right to recover for unjust enrichment— "do[es] not fall within the scope of copyright." *Id.*

In the Fifth Circuit, "the 'basic rule' for computing actual damages in copyright is to inquire what revenue would have accrued to plaintiff but for the infringement." *Energy Intel. Grp., Inc. v. Kayne Anderson Cap. Advisors, L.P.*, 948 F.3d 261, 275 (5th Cir. 2020). That is not what Buss's expert report does. Nor does it consider profits. *See Bus. Trends Analysts, Inc. v. Freedonia Grp., Inc.*, 887 F.2d 399, 406 (2d Cir. 1989) (defining profits under the Copyright Act to mean "'profits'" in the lay sense of gross revenue less out-of-pocket costs"). Accordingly, Medtronic's motion 4 and 5 are GRANTED.

7

The following section of the Buss report considers a "measure of unjust enrichment . . . based on additional or incremental profits achieved due to Medtronic's alleged misuse of the Subject IP." Docket No. 212-10 at 4. Specifically, Buss states that Medtronic is alleged to have used the videos in "marketing, promotion and employee education related to the launch and sale of venous stent products." *Id.* But ultimately, other than noting that Medtronic expects to achieve $937 million in revenue from the sale of certain stent products, Buss declines to derive at any damages number because he lacked certain "data, documents, and information." *Id.* at 5. While this portion of the report could relate to "profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages," it is lost on this Court what testimony, if any, Buss could provide on this issue. 17 U.S.C. § 504(b). Again, Buss does not offer any analysis or a conclusion. He declines to do so citing "insufficient information . . ." Docket No. 212-10 at 5.

Federal Rule of Civil Procedure 26 requires an expert's report to provide "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i); *see also Honey-Love v. United States*, 664 F. App'x 358, 361 (5th Cir. 2016) ("The expert report should be 'detailed and complete,' stating the testimony that will be presented during direct examination and the reasons therefor."). Buss, as to this portion of the report, declined to offer his opinion. Therefore, it would be in violation of the Rules, and highly prejudicial, for him to do so at trial. Thus, Medtronic's motion 6 to restrict evidence and/or testimony on this portion of the report is GRANTED.

**IV.    Conclusion**

Medtronic's motion is granted in part and denied in part.

**SO ORDERED**, this the 21st day of May, 2022.

8

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE